**Tuvia Ben Shmuel YOSEF, Plaintiff–Appellant,**

v.

**The PASSAMAQUODDY TRIBE, The Penobscot Nation, The Houlton Band of Maliseet Indians, and the Shawmut Bank of Boston, Defendants–Appellees.**

**No. 1005, Docket 88–6201.**

United States Court of Appeals, Second Circuit.

Argued May 5, 1989.

Decided May 26, 1989.

Tuvia Ben Shmuel Yosef, Forest Hills, N.Y., pro se.

James B. Weber, (Tureen & Margolin, Portland, Me.) submitted a brief, for defendants-appellees.

Before KAUFMAN, FEINBERG and NEWMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

We are asked to decide whether a party who initiates suit in federal court loses the right to unilaterally dismiss his action when, more than nine months before, the defending parties challenged the sufficiency of his complaint in a motion to dismiss for failure to state a claim and also sought the imposition of penalties. Despite appellant's attempted dismissal, the district court adjudicated the motion and found that the claims were meritless and imposed penalties. Because we believe the motion could have been treated as a request for summary judgment and granted, sanctions were properly imposed. We affirm.

Tuvia Ben Shmuel Yosef, formerly a member of the Maine bar and then known as Don Gellers, brought this *pro se* action against the Secretary of the Interior ("the Secretary"),[1] the Passamaquoddy Tribe, the Penobscot Nation and the Houlton Band of the Maliseet Indians ("the Tribes"), the Shawmut Bank of Boston ("the Bank"), and Thomas Tureen, claiming that his legal work resulted in the passage of the Maine Indian Claims Settlement Act of 1980, P.L. 96–420, 94 Stat. 1785, 25 U.S.C. §§ 1721–1735.[2]

Appellant asserts that the passage of the Act gave him the right to recover $27 million dollars in *quantum meruit* from the $81.5 million dollar fund created by the Act, pursuant to an alleged contingency fee agreement he had with the Passamaquoddy Indians. He claims appellee Tureen caused a large part of the funds awarded the Indians to come into the hands of the Bank, and alleges the Bank had a duty to avoid acquisition of the funds.

Yosef apparently served as an attorney for the Passamaquoddy tribe from 1964 to 1971, under a Claims Attorney Contract pursuant to 25 U.S.C. § 81. The contract provided that it would continue in force for ten years from the date of its approval by the Secretary of the Interior. On September 7, 1967, appellant submitted the contract to the Department of the Interior for approval as required by § 81. The Secretary declined to approve it because he believed the Passamaquoddies were not, at that time, a federally recognized tribe.

Despite this development, appellant continued to represent the tribe until 1971, when he was convicted of possession of marijuana and fled from Maine to Israel. There, Gellers adopted the name Tuvia Ben Shmuel Yosef. He was subsequently disbarred by the State of Maine. Although in his absence appellee Tureen became the

Claims Attorney for the Passamaquoddies, Yosef resubmitted his contract with the tribe to the Secretary of the Interior in 1979. This time the Secretary declined to accept the agreement because the tribe would not ratify it. Appellant concedes he did not have any contractual arrangement with the Penobscot Nation or the Houlton Band of the Maliseets.

Yosef filed this action in the Eastern District of New York on December 15, 1986. Appellees were not served until April 1987. This was beyond the 120 day period mandated by Fed.R.Civ.P. 4(j). In addition to a motion to dismiss for failure to complete service of process within the time period mandated by Rule 4(j), appellees filed motions to dismiss on various other grounds including absence of federal question jurisdiction, diversity jurisdiction, personal jurisdiction, and lack of standing. They also moved, pursuant to Fed.R.Civ.P. 12(b)(6), for dismissal on the ground that the complaint failed to state a claim upon which relief could be granted because the statute of limitations had expired. Shortly thereafter, the Tribes and the Bank moved for sanctions under Fed.R.Civ.P. 11. In opposing the Rule 12(b)(6) motion, appellant presented an "affirmation" and new exhibits to the court. Appellees were then permitted to file reply memoranda.

In December 1987, the parties stipulated that all papers relating to the motion to dismiss would be filed and served by appellant no later than January 11, 1988. Nonetheless, on February 8, 1988, Yosef filed a motion for an enlargement of time, claiming that there was good cause for his failure to timely complete service of process.

More than eight months after appellees moved to dismiss, and before Chief Judge Platt rendered his decision, appellant asked for dismissal of the action pursuant to Fed. R.Civ.P. 41(a)(1)(i). The court then filed a

---

**1.** The opinion below does not refer to the Secretary of the Interior, who, consequently is not a party to this appeal. We therefore do not consider appellant's claims against the United States.

**2.** The purpose of the Act was to provide for Congressional ratification and implementation

of a settlement of land claims raised by the three Maine Indian Tribes to as much as two-thirds of the lands comprising the State of Maine. *See* H.R.Rep. No. 1353, 96th Cong.2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Admin. News 3786, 3787.

memorandum and order finding all of his claims meritless and imposing sanctions directing him to pay $4,000 to the attorneys for the Tribes, Bank, and Tureen, and $1,000 in costs and expenses. Chief Judge Platt determined that diversity jurisdiction did not exist for the claims against the Tribes and that no personal jurisdiction existed over the Tribes, Tureen or the Bank. On appeal, Yosef urges us to reverse these findings on the theory that, following his effort to voluntarily dismiss the suit, the district court lacked authority to impose sanctions.

This court has liberally construed Rule 41(a)(1)(i), which allows plaintiffs to voluntarily dismiss an action. We have generally held that a valid dismissal deprives a court of authority to adjudicate any matters subsequently presented including sanctions, *Johnson Chemical Co. v. Home Care Products*, 823 F.2d 28 (2d Cir.1987) and attorney's fees, *Santiago v. Victim Services Agency*, 753 F.2d 219 (2d Cir. 1985).[3] But, we recognized a limit. We noted that a defendant may cutoff a plaintiff's right to terminate an action by filing an answer or moving for summary judgment. *See Johnson*, at 30, citing *Santiago*. We believe appellees' motion to dismiss was transformed into a request for summary judgment which Chief Judge Platt granted, and that he therefore retained the power to impose a fine.

Among other things, Rule 12(b)(6) provides that if, on a motion to dismiss for failure to state a claim, matters outside the pleadings are presented to the court and not excluded, the motion "shall be treated as one for summary judgment." The Advisory Committee Notes on the Rules recognize numerous cases where district courts have permitted the introduction of matter beyond the pleadings to support or resist a motion to dismiss for failure to state a claim, and then converted the motion to one for summary judgment. *E.g., Samara v. United States*, 129 F.2d 594 (2d

Cir.), *cert. denied*, 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942); *see National Cement Inc. v. Mead Corp.*, 80 F.R.D. 703 (S.D.N.Y.1978).

■ In the district court, appellees submitted affidavits supplementing their motion to dismiss. The additional submissions supported their contention that they had not been properly served within the applicable limitations period. Additionally, Yosef appended an exhibit, titled "Advice of Allotment," to support his claim that the date from which the statute of limitations should run was January 7, 1981. Moreover, in the portion of his "Affirmation" that responded to appellees' statute of limitations arguments, Yosef referred to various letters he had sent to an official of the Bureau of Indian Affairs. These submissions were not excluded by the court and have become a part of the record on appeal. Accordingly, it is appropriate to treat the motion to dismiss under Rule 12(b)(6) as one for summary judgment. *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972).

■ Rule 41(a)(1)(i) provides that service of an answer or summary judgment motion marks the point at which the plaintiff's unilateral right to dismiss the action terminates. Consequently, where a 12(b)(6) motion ripens into one for summary judgment, the right to voluntary dismissal is extinguished at the time the motion is served. *See Kurkowski v. Volcker*, 819 F.2d 201, 203 (8th Cir.1987); *Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659, 661 (5th Cir.1979); 5 Moore's Federal Practice 41.-02[3] at 41–26–27 (2d ed. 1988). Accordingly, the district court retained jurisdiction to impose sanctions, even after appellant attempted to dismiss the case. *Kurkowski*, 819 F.2d 201, at 203. Our holding in *Thorp v. Scarne*, 599 F.2d 1169 (2d Cir.1979), is not to the contrary. In *Thorp* we explicitly declined to address the issue we decide today—whether a motion to dismiss, if ac-

---

**3.** In view of our disposition of this appeal, we need not consider whether a district court retains jurisdiction to impose Rule 11 sanctions under circumstances where a motion to dismiss under Rule 12(b)(6) does not ripen into a mo-

tion for summary judgment but the defendant has filed a motion for sanctions before the plaintiff files a motion for voluntary dismissal under Rule 41(a)(1).

companied by matter dehors the pleading, qualifies as a motion for summary judgment for Rule 41(a)(1)(i) purposes. *See id.*

■ Appellees were successful· on their motion. Chief Judge Platt found that appellant's claims were "meritless." He also held that he did not have diversity jurisdiction in a *quantum meruit* suit against the Tribes. Moreover, the district judge found appellant had failed to establish personal jurisdiction against the Tribes, Tureen and the Shawmut Bank. We agree that neither diversity nor federal question jurisdiction was present.

■ Even if appellant had been able to establish diversity jurisdiction and obtain personal jurisdiction, the action would have been governed by the applicable state statute of limitations. *See Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir.1984). All parties agree that the applicable statute of limitations was six years. Thus, if we adopt appellant's assertion that his action did not accrue until January 7, 1981, it is time-barred—even assuming he was deserving of the benefit of a sixty day extension pursuant to N.Y. CPLR § 203(b)[5].

■ Left unresolved by the district court's order was the issue of appellant's failure to comply with the 120 day period for service of the complaint. Dismissal of an action is mandatory under Rule 4(j) when the 120 day limit is violated unless "good cause" can be shown. *Lovelace v. Acme Markets Inc.*, 820 F.2d 81, 84 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).

On appeal, Yosef described his failure to timely complete service as a "minimal miscalculation." This excuse does not hold water. Moreover, his request for an enlargement of time came too late—nearly a month after the date set by the court for the submission of all papers.

■ The revised Rule 11 states emphatically that the court "shall" impose sanctions whenever a violation of the rule is discerned. Fed.R.Civ.P. 11 Advisory Committee Note to 1983 amendment. *Accord Eastway Construction Corp. v. City of New York*, 762 F.2d 243 n. 7 (2d Cir.1985).

Appellant's claims were patently frivolous. He has manipulated the judicial system to an extraordinary degree. Chief Judge Platt clearly did not err in imposing sanctions.

We have considered the other issues raised on appeal and find them without merit. Accordingly, we affirm.