Mihail **CHEMIAKIN,**
Plaintiff–Appellant,

**Mallow, Konstam, Hager & Fischer,**
Appellants,

v.

**Igor YEFIMOV, doing business as Hermitage; Bella Ezersky,**
Defendants–Appellees.

No. 1158, Docket 90–9009.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1991.

Decided April 29, 1991.

Abe H. Konstam, New York City (Mallow, Konstam, Hager & Fischer, New York City, on the brief), for appellants.

Igor Yefimov, pro se.

Bella Ezersky, pro se.

Before OAKES, Chief Judge, and TIMBERS and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from a judgment entered October 17, 1990, in the Southern District of New York, Kenneth Conboy, *District Judge*, dismissing appellant's complaint pursuant to Fed.R.Civ.P. 12(b)(6) and imposing Rule 11 sanctions against appellant law firm.

Appellant Mihail Chemiakin is a Russian exile who left the Soviet Union in 1971 and now resides in New York City. He commenced a libel action against appellees Bella Ezersky, author of a book entitled *Masters*, and Igor Yefimov d/b/a Hermitage, publisher of the book. He sought an injunction and damages.

On appeal, appellants contend that Chemiakin's first cause of action was meritorious and should not have been dismissed, that the district court erred in imposing sanctions, that the district court should have held a hearing with respect to the value of services rendered by Ezersky's counsel, and that the court should not have granted sanctions in the amount that it did. Ezersky, now appearing *pro se*, asserts that the district court's order should be affirmed and that we should impose additional sanctions against appellants for pursuing a frivolous appeal.

For the reasons that follow, we affirm in part and vacate and remand in part. In addition, we impose attorney's fees, double costs and $2500 damages against appellant law firm for pursuing this frivolous appeal.

I.

We shall set forth only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. In view of the fatal jurisdictional flaw referred to below, we discuss the merits of the underlying libel claim only insofar as they influenced the district court's decision to grant Rule 11 sanctions.

Chemiakin is a painter who apparently has gained some recognition in the Soviet Union. *Masters*, the book in which he allegedly was libelled, is published in Russian only. The volume of the book here involved was published in February 1989.

The alleged libel is based on the juxtaposition of (1) Ezersky's assertion that Chemiakin signed the so-called "Letter of Ten," an open letter to Mikhail Gorbachev, in which Gorbachev was urged to "trust the people and allow a cultural dialogue" and (2) Chemiakin's denial of having anything to do with the letter. Chemiakin asserts that this juxtaposition suggests that he is a liar.

Chemiakin claims that he has been damaged in the eyes of the Russian emigre community. He asserts that he had been invited to hold an art exhibition in Moscow. He further asserts that Ezersky insinuates that he signed the Letter of Ten and then denied doing so in order to placate the Soviet hierarchy and curry favor so that he would be permitted to hold the art exhibition. The art exhibition and Chemiakin's possible role in it, however, are not dis-

cussed or even mentioned in *Masters,* as the district court found. Yefimov, the publisher, stated that the printing of *Masters* by him numbered only 1,000 copies and that there are no more than 30 copies of the book currently in (Russian) bookstores scattered all over various western nations. On appeal, Chemiakin claims that injunctive relief is warranted to bar any re-publication of the book.

Chemiakin commenced his action on May 4, 1990. On May 25, Chemiakin obtained an order to show cause why a preliminary injunction should not be issued. Chemiakin sought to enjoin appellees from publishing or distributing *Masters.* At the June 1 hearing on his preliminary injunction motion, Chemiakin himself failed to appear. (Counsel represented that Chemiakin was ill.) Counsel did not explain why Chemiakin had waited for more than a year to seek injunctive relief. After hearing testimony from appellees, the court refused to grant injunctive relief.

Appellees then moved for dismissal or summary judgment and for Rule 11 sanctions. Appellant's response to the motion was termed by Judge Conboy "wholly incoherent."

The district court held that the juxtaposition of two statements that Chemiakin claimed "depict[ed] him as a liar" was insufficient as a matter of law to state a claim for defamation. It held that, while false, the statement that appellant signed the Letter of Ten was not defamatory, and that Chemiakin's denial of the statement was neither false nor defamatory. The court also held that the one-year statute of limitations barred an action for libel or slander. (While conceding the one-year time bar on appeal, Chemiakin argues that the time bar would not preclude an injunction forbidding any re-publication of the book.) The court concluded in its memo endorsement that:

> "Because the complaint is time barred, because it does not, and cannot, state a claim in defamation, and because plaintiff does not put in dispute any material fact raised in the motion, most especially defendant's denial of any malicious in-

tent or reckless behavior in the writing and publishing of the disputed statements, essential in light of plaintiff's conceded status as a public figure, defendant's motion to dismiss the complaint with prejudice is granted. Furthermore, the patently frivolous nature of the complaint and the extraordinarily shoddy legal analysis conducted by plaintiff's counsel as the grounding for the lawsuit require the imposition of sanctions under Rule 11. Plaintiff's counsel is directed to pay defendant Ezersky's legal expenses, in the amount of $10,027.50."

Both Chemiakin and the law firm that represented him have appealed.

## II.

We turn first to the critical initial inquiry of jurisdiction. Since we hold that the district court lacked subject matter jurisdiction to adjudicate the merits of the underlying action, we are constrained to vacate the district court's Rule 12(b)(6) dismissal.

At the outset of oral argument before us March 27, 1991, a member of the panel inquired of counsel for appellants, as a threshold matter, what was the basis for jurisdiction. Counsel replied that jurisdiction was based on diversity. Both Chemiakin and one of the defendants, Ezersky, however, are alleged in the complaint to be citizens of New York. Accordingly, there was no jurisdiction based on 28 U.S.C. § 1332(a)(1) (1988). We vacate the judgment of the district court, except we affirm the award of sanctions against appellant law firm, and we remand the case to the district court with instructions to dismiss the complaint for lack of subject matter jurisdiction.

## III.

■ We turn next to the question of the district court's power to impose Rule 11 sanctions, a question that is separate and apart from the question of the court's power to adjudicate the merits. Regardless of our vacating the judgment which disposed of the merits of the case, we find it appropriate to affirm the court's award of sanc-

tions. Although we have not previously been squarely faced with the question whether a district court that lacks subject matter jurisdiction over an action still may impose sanctions pursuant to Rule 11, we are persuaded by the analyses of those courts that previously have addressed the question, and which uniformly have answered the question in the affirmative.

In *Willy v. Coastal Corp.* ("*Willy II*"), 915 F.2d 965, 966–67 (5 Cir.1990), the Fifth Circuit held that the district court had the inherent power to impose Rule 11 sanctions despite the lack of subject matter jurisdiction. Willy, the plaintiff, had brought a wrongful discharge action in the state court. The defendant removed the action to the federal court. Willy then moved to remand. In response to the defendant's motion to dismiss, Willy "filed a 110–page motion for summary judgment and submitted 1200 pages of unindexed, unorganized supporting material." *Id.* at 966. After two hearings, the district court granted the Rule 12(b)(6) motion and also granted the defendant's motion for Rule 11 sanctions. *Id.* On appeal, the court of appeals held that the action had been improvidently removed and that the district court accordingly lacked subject matter jurisdiction over it. *Willy v. Coastal Corp.* ("*Willy I*"), 855 F.2d 1160, 1173 (5 Cir. 1988). The court stated, however, that "we and the district court retain jurisdiction over the Rule 11 aspect of this case...." *Id.* at 1172. The court remanded for reconsideration of the amount and the basis for sanctions. *Id.* at 1172–73.

Following remand, in *Willy II*, the court of appeals squarely addressed Willy's contention that, lacking subject matter jurisdiction, the district court also lacked the power to impose Rule 11 sanctions. The court of appeals persuasively rejected that contention. "This circuit and others have recognized that to effectuate the goals of Rule 11, a district court must possess the authority to impose sanctions irrespective of the existence of subject matter jurisdiction." *Willy II, supra,* 915 F.2d at 967. The court found unpersuasive Willy's attempt to distinguish prior Fifth Circuit cases on the ground that the sanctioned parties in those earlier cases had been attempting to invoke, rather than resist, federal jurisdiction. "Willy and his attorney were sanctioned for objectionable conduct which was independent of his jurisdictional posture in the case." *Id.* Although Willy "was entitled to contest removal jurisdiction," this right "did not include the authority to file misleading or incomprehensible pleadings...." *Id.*

In rejecting Willy's contention that Rule 11 jurisdiction is dependent upon subject matter jurisdiction, the court of appeals relied on the Supreme Court's decision in *Cooter & Gell v. Hartmarx Corp.,* 110 S.Ct. 2447, 2456 (1990):

"Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated."

We recognize that the Court made this statement in a case that had been dismissed voluntarily pursuant to Rule 41(a)(1)(i) (see § IV of this opinion, *infra*); rather than in a context in which the court lacked subject matter jurisdiction. However, we agree with the *Willy II* court's implicit suggestion that one can derive from *Cooter & Gell* the broader principle that Rule 11 jurisdiction is independent of subject matter jurisdiction and that the decision to sanction is "a collateral one...." *Willy II, supra,* 915 F.2d at 967. In *Willy II,* the Fifth Circuit "reaffirm[ed] [its] conclusion in *Willy I* that the district court had jurisdiction to impose Rule 11 sanctions upon Willy and his attorney." *Id.* at 968.

The Fifth Circuit's analysis in the *Willy* cases provides an appropriate point of departure for us in this case. Indeed, imposition of sanctions upon appellant law firm in this case is arguably even more appropriate than it was against Willy, insofar as appellants here willingly availed themselves of the judicial forum in which sanctions were imposed.

Furthermore, our holding that the court had jurisdiction to impose sanctions is consistent with the decisions of circuits other than the Fifth. In *Wojan v. General Motors Corp.*, 851 F.2d 969 (7 Cir.1988), for example, the Seventh Circuit affirmed the district court's denial of Rule 11 sanctions, but explicitly rejected the district court's conclusion that it was without *power* to impose them. In that case, like this one, neither the parties nor the district court noticed that the purported predicate for subject matter jurisdiction, diversity, was defective. *Id.* at 974. Although plaintiff was a citizen of Michigan, which was defendant GM's principal place of business, GM's answer to the complaint stood mute "as to its possible status as a citizen of the state of Michigan...." *Id.* at 970. Likewise, the district court there "accepted part of the blame, noting its failure to inquire, *sua sponte*, into its subject matter jurisdiction." *Id.* at 974. In any event, five and one-half years into the case, counsel for GM first raised the jurisdictional defect, and the district court ultimately dismissed on that basis. *Id.* at 971. The court subsequently denied the plaintiff's motions for Rule 11 sanctions "on the ground that its dismissal for lack of diversity jurisdiction prior to a ruling on the Rule 11 motions divested the court of 'jurisdiction' to consider the motions." *Id.* (Citation omitted.)

While the Seventh Circuit affirmed denial of the sanctions on another basis, it held that the district court had erred in concluding that it lacked the inherent power to sanction in the face of a case premised on defective diversity jurisdiction:

> "Recently, we observed that '[j]urisdiction is an all-purpose word denoting adjudicatory power. A court may have power to do some things but not others, and the use of "lack of jurisdiction" to describe the things it may not do does not mean that the court is out of business.'
> ... [P]arties to a suit are not shielded from Rule 11 sanctions simply because the court lacks subject matter jurisdiction over the underlying case. Thus, ... we hold that the district court was not precluded from later exercising its inherent jurisdiction over the plaintiff's mo-

tions for the imposition of Rule 11 sanctions against GM, filed after GM's discovery of the jurisdictional defect."

*Id.* at 972 (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7 Cir.1987) (holding Rule 11 sanctions could be awarded in a case voluntarily dismissed pursuant to Rule 41(a)(1))), *cert. dismissed*, 485 U.S. 901 (1988); *see also Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 841 (1 Cir.1990) ("Normally, even after a federal district court determines that it lacks jurisdiction of a case, it retains jurisdiction to consider whether its process was abused during the course of that determination."); *Westlake North Property Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1303 (9 Cir.1990) ("even if a court does not have jurisdiction over an underlying action, it may have jurisdiction to determine whether the parties have abused the judicial system and whether sanctions are appropriate to remedy such abuse").

It was precisely such a perceived abuse of the judicial process that caused the district court in the instant case to impose sanctions against appellant law firm.

## IV.

We would be remiss at this juncture were we not to acknowledge the somewhat grudging view we have taken in the past with regard to a district court's power to impose sanctions in the wake of a voluntary dismissal pursuant to Rule 41(a)(1)(i). *Johnson Chem. Co. v. Home Care Prods., Inc.*, 823 F.2d 28, 31 (2 Cir.1987). While cases in which a plaintiff voluntarily discontinues an action pursuant to that rule are not perfectly analogous to cases in which the district court lacks subject matter jurisdiction, both contexts present the question of the court's continuing power over litigants who do not, or no longer, have a justiciable case before the court.

In *Johnson Chemical Co.*, we held, based in part on our earlier decision in *Santiago v. Victim Services Agency of the Metropolitan Assistance Corp.*, 753 F.2d 219 (2 Cir.1985), that "[o]nce Johnson had dismissed the action under Rule 41(a)(1)(i),

the court lost all jurisdiction over the action." *Johnson Chem. Co., supra,* 823 F.2d at 31. Our earlier *Santiago* decision had decided, more narrowly, that the district court was without jurisdiction to award attorney's fees (sought pursuant to 42 U.S.C. § 1988 (1988)) after a Rule 41(a)(1)(i) dismissal had been filed. *Santiago, supra,* 753 F.2d at 220. *But see Szabo, supra,* 823 F.2d at 1077 ("it is not easy to distinguish *Santiago* on these grounds. The Second Circuit did not rely on the considerations particular to § 1988 that we have discussed. It said only that the court lacks 'jurisdiction', implying that the district judge could not have awarded fees under *any* statute or rule. To the extent the Second Circuit believes that a dismissal under Rule 41(a)(1)(i) deprives the court of power to do anything at all, we agree with the Ninth Circuit's contrary view").

The Seventh Circuit's reading of a broad implication in our *Santiago* decision proved to be prophetic. In *Johnson Chemical Co., supra,* decided a mere ten days after *Szabo,* we explicitly extended the *Santiago* holding to the Rule 11 context. 823 F.2d at 31. *See also Yosef v. Passamaquoddy Tribe,* 876 F.2d 283, 286 (2 Cir.1989) ("a valid dismissal deprives a court of authority to adjudicate any matters subsequently presented including sanctions, and attorney's fees" (citation omitted)), *cert. denied,* 110 S.Ct. 1474 (1990); *Baar Laboratories, Inc. v. Abbott Laboratories,* 867 F.2d 743, 747 (2 Cir.1989) (same).

The Seventh Circuit, however, was more astute than we in anticipating the Supreme Court's *Cooter & Gell* decision, which, in holding that the collateral sanctions issue could be adjudicated after a voluntary dismissal, clearly overruled *Johnson Chemical Co.* and its progeny. *See Cooter & Gell, supra,* 110 S.Ct. at 2455 ("Of the Circuit Courts to consider this issue, only the Court of Appeals for the Second Circuit has held that a voluntary dismissal acts as a jurisdictional bar to further Rule 11 proceedings. *See Johnson Chem. Co., Inc. v. Home Care Products, Inc.,* 823 F.2d 28, 31 (1987). The view more consistent with Rule 11's language and purposes, and the one supported by the weight of Circuit

authority, is that district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1).").

We leave for another day any possible revisitation of the *Santiago* question, narrowly construed, of a district court's power to assess statutory attorney's fees in a case that has been voluntarily dismissed. *See State of Conn. v. Insurance Co. of America,* 121 F.R.D. 159, 161 (D.Conn.1988) ("[While] *Johnson Chem. Co.* ... has not received universal acceptance ... most courts have generally agreed with the *Santiago* reasoning regarding Rule 41(a)(1)(i) and thus would not, for instance, award attorney fees pursuant to 42 U.S.C. § 1988 after a case had been voluntarily dismissed...."). For today, we hold only, in line with the letter and spirit of *Cooter & Gell* and the persuasive analyses of our sister circuits, that courts have the power to impose Rule 11 sanctions even when they lack subject matter jurisdiction to adjudicate the merits of a dispute.

## V.

■ Having held that the district court had the power to impose Rule 11 sanctions, we turn now to the question whether it properly did so in this case. We hold that it did. We affirm the award in its entirety.

*Cooter & Gell, supra,* requires courts of appeal to "apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." 110 S.Ct. at 2461. The district court opinion, excerpted *supra* at page 126, sets forth in detail the court's justification for imposing sanctions. Counsel in this case has been consistently shoddy in his legal work, as the recent discovery about lack of subject matter jurisdiction serves to confirm. Moreover, the amount imposed by the district court, $10,270.50, is not excessive in light of all the circumstances. We defer to Judge Conboy's decision to impose against appellant law firm all of the fees requested.

■ Appellants' claim that Judge Conboy should have held a hearing on the

amount of fees and should not have awarded an increase from the originally-sought $8,377.50 to the ultimately awarded $10,270.50 is easily disposed of. Although appellants attempt to engraft onto Rule 11 a requirement that an evidentiary hearing be held prior to the imposition of sanctions, there is no such requirement, absent disputed facts or issues of credibility, here as in the ordinary case, compare Oliveri v. Thompson, 803 F.2d 1265, 1280 (2 Cir. 1986), cert. denied, 107 S.Ct. 1373 (1987); McLaughlin v. Bradlee, 803 F.2d 1197, 1205 (D.C.Cir.1986), with Tom Growney Equip. v. Shelley Irrigation Dev., 834 F.2d 833, 835 (9 Cir.1987); Braley v. Campbell, 832 F.2d 1504, 1515 (10 Cir.1987) (en banc). The record reveals that Ezersky's counsel, Alexander Dranov, submitted detailed accounts of the services rendered and his fees up to $8,377.50. He later wrote a letter to the court setting forth the total as $10,270.50; this increased amount Ezersky says reflects the time spent in responding to opposition papers. Although appellants describe this letter as "ex parte," the letter itself indicates that a copy was sent to opposing counsel. In any event, the amount of fees awarded does not constitute an abuse of discretion. Finally, appellants' assertion that Dranov's "knowledge, abilities and communication skills belies the fact that he did the research and authored the Memorandum of Law in support of the motion to dismiss" is unfounded and constitutes a shallow attack upon a fellow member of the bar. We observe that Ezersky's appellate brief, with which Dranov apparently assisted her, is quite good. Furthermore, appellants' additional claim that Dranov was not admitted to practice before the district court is irrelevant to the issue of whether sanctions were appropriately imposed against appellant law firm. We affirm the imposition of $10,270.50 in sanctions pursuant to Rule 11.

## VI.

This brings us to the question of appellate sanctions pursuant to Fed.R.App.P. 38. Appellants in the instant case are in the hapless position of having managed to prove, on appeal, not that the district court underestimated their claims but rather that it should not have bothered with them at all.

■ Rule 38 provides that if we "determine that an appeal is frivolous," we may "award just damages and single or double costs to the appellee." Our authority to make an appropriate award is well-established. In re Hartford Textile Corp., 659 F.2d 299, 303 (2 Cir.1981), and authorities cited, cert. denied, 455 U.S. 1018 (1982). In the instant case, in light of the lack of jurisdiction, coupled with the weakness of appellants' arguments on the merits, we impose a damage award of $2,500, along with double costs and attorney's fees to appellees. Appellees, pro se, have suffered considerable vexation in connection with this lawsuit. It is unfortunate that the case went as far as it did. The award of damages, double costs and attorney's fees will serve to compensate appellees, in part, for the time and money that they have expended.

We hold it appropriate to assess the damages, double costs and attorney's fees directly against appellant law firm, to be paid directly to appellees. The law firm is primarily responsible for the jurisdictional oversight as well as for the other missteps that have characterized this ill-fated litigation from start to finish.

## VII.

To summarize:

Since diversity was absent, the district court lacked jurisdiction to adjudicate the merits of this case. We accordingly vacate the court's Rule 12(b)(6) dismissal and remand the case with instructions to dismiss pursuant to Rule 12(b)(1). The court, however, did have the power to impose sanctions pursuant to Rule 11. We affirm the specific grant of sanctions. We also impose double costs, attorney's fees and $2,500 damages for a frivolous appeal.

Affirmed in part; vacated and remanded in part.

KEARSE, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment to the extent that it (a) vacates the district court's dismissal of the complaint on Rule 12(b)(6) grounds and requires dismissal instead for lack of subject matter jurisdiction, and (b) imposes sanctions in connection with this appeal. I respectfully dissent, however, from so much of the judgment as affirms the award of Rule 11 sanctions as imposed by the district court.

The lack of subject matter jurisdiction in this case is plain from the face of the complaint. Jurisdiction was premised on diversity of citizenship; yet the complaint alleged that the plaintiff and one of the two defendants were citizens of the same state. I would agree with the majority that notwithstanding such a lack of jurisdiction, the district court has inherent power to punish misconduct that occurs while the case is before it. *See, e.g., United States v. United Mine Workers*, 330 U.S. 258, 289–95, 67 S.Ct. 677, 693–97, 91 L.Ed. 884 (1947) (court has power to hold a party in criminal contempt for failure to comply with an order that court had no jurisdiction to enter). Thus, if the district court here had imposed sanctions for some misfeasance such as failure to make required disclosures, *see Wojan v. General Motors Corp.*, 851 F.2d 969, 971, 976 (7th Cir.1988), or for some other "objectionable conduct," *Willy v. Coastal Corp.*, 915 F.2d 965, 967 (5th Cir. 1990); *see also Willy v. Coastal Corp.*, 855 F.2d 1160, 1172 (5th Cir.1988), I would have no difficulty in principle in affirming an award of sanctions. Nor would I have difficulty in concluding that the court had the power to impose sanctions for the frivolous invocation of jurisdiction, *see Unanue-Casal v. Unanue-Casal*, 898 F.2d 839, 841 (1st Cir.1990); *see generally Wojan v. General Motors Corp.*, 851 F.2d at 974–75.

Here, however, the district court did not notice the obvious lack of jurisdiction and proceeded to rule on the merits of the complaint, and its award of sanctions was premised solely on the lack of merit of the complaint. I do not believe the district court has the power to sanction a party on the sole basis of the lack of merit of a case whose merit the court has no jurisdiction to decide.